Moseley v. Kemper May it please the Court, my name is Crystal Alvarez, and I have the privilege of representing the appellant, Timothy Moseley. Robert Palmer was appointed by the Seventh Circuit to represent Mr. Moseley, and I have been working under his supervision. Moseley respectfully requests that this Court reverse the lower court's decision and remand  The Wisconsin courts here misapplied the standard for an in-camera review when they applied Greene's specific factual basis standard, as opposed to the United States Supreme Court's plausible showing inquiry. Moseley argues that the denial of an in-camera review was contrary to clearly established federal law for two reasons. First, the state and federal courts establish different standards. The state standard is more demanding and more restrictive to the detriment of the defendant. Secondly, Moseley has met the United States Supreme Court standard set out in Pennsylvania v. Ritchie. The state concedes that the language used in both cases is distinct, but this is not a mere semantic difference. The application of Ritchie and Greene is fundamentally distinct as well. The standards diverge most notably in the following respect. Showing that something is plausible under the Supreme Court standard is a lower threshold than showing a specific and factual basis. Plausible is defined as something that is possibly true. Under the Ritchie standard, a defendant does not need to show materiality or favorability to a degree of absolute certainty. Ritchie, like Greene, argued that his accuser's counseling records might contain inconsistent statements, or that they might contain the names of favorable witnesses. In fact, Ritchie couldn't prove that the information he sought would be in those records. He couldn't even prove that the information he sought was likely to be in those records. But for the purposes of the Supreme Court standard, that was not detrimental to his case. All he needed to show was plausibility. What plausibility would it show? That she was tolerant or attracted or what? Your Honor, are you asking with respect to our case? With respect to Moseley's request? Your Honor, it would go directly to the victim's credibility. And for the purposes of impeachment, it would be highly material and favorable to the defendant. Namely, without the records that we're seeking, we didn't know. We couldn't prove or cross-examine on how many medications was she on for her psychosis? What dosages was she prescribed? Was she taking the appropriate dosage? What symptoms are a result of the medication? What symptoms are a result of her psychosis? We couldn't cross-examine or impeach on all of those issues that go directly to the critical witness's credibility. Is this for some period of time? How long was this engagement, whatever you want to call it? It's a number of years, right? Yes, Your Honor. The affair between T.H. and Moseley lasted for a period of six years. With respect to that affair, the parties both concede that the affair lasted six years. And Moseley has stated that over that six-year period that they were intimate, they had hundreds of sexual encounters. However, T.H. claims that she can only remember three of those instances. That shows the severity of her mental lapses, Your Honor, and of her mental infirmity. But without the records, we can't confirm or cross-examine on what medications she was on, what infirmity she specifically had, and how that would affect her ability to perceive or relay the events. Returning to the contrast between Ritchie and Greene, the dissent in Ritchie referred to the claims that he brought forth as vague speculations, and the majority even conceded that what Ritchie sought was, and this is a direct quote, unspecified exculpatory evidence. By definition, that unspecified evidence is in direct contradiction to Greene's specific and factual basis. In Ritchie, there was no specific or factual basis that the information he sought would be in the records. But unlike Greene, Ritchie actually was granted an in-camera review. Based on the restrictive Greene standard, if Ritchie's case were to have been heard in the Wisconsin courts, he very likely would have lost. Your Honors, here, the United States Supreme Court standard has been met. Moseley satisfied the Ritchie standard because he has shown that the information in the records would be material and favorable for the following reasons. First, T.H. was the critical witness in this case. Given that the allegations arose surrounding their affair and the intimate conduct, there was nobody else that could testify on behalf of Moseley or on behalf of T.H. It was her word against his. As a result, if the jury believed T.H., Moseley would be found guilty, and if the jury did not believe T.H., he would be acquitted. Her testimony was dispositive here. Secondly, T.H. has brought prior allegations against Moseley of sexual assault that were promptly dismissed for lack of probable cause. Judge Denise Now, who sits on a circuit court in Wyoming, heard those allegations and deemed that they were meritless. And, Your Honors, there's a nexus to this case. Moseley understands that that's a different case. But there's a nexus to this case because in this trial, T.H. repeatedly testified that she did not consent to the sex. However, a neutral party, a judge, had already heard those allegations and deemed that meritless. She said it couldn't even proceed to trial. There was no basis for that. So in making those same claims with respect to this trial against the same defendant, she either perjured herself or she was severely mistaken. Again, the information in the records would go to her credibility and would provide a basis for impeachment. Third, T.H. admitted that she was seeing a therapist at the time in which she was involved with Moseley. That's not speculative, Your Honors. We know that by virtue of the witness's own admission. And fourth, we know that she talked about her relationship with Moseley in those therapy sessions. Again, that's not at all speculative. We know that by T.H.'s own admission. In this case, when police officers began investigating Moseley, they approached T.H. and questioned her about their relationship. And she told police officers that she couldn't remember much at all. So they should look at her therapy records because the information would be there. Again, Your Honors, what's in those therapy records goes to the credibility of the witness, would provide a basis for impeachment, and is dispositive because she's a critical witness. Additionally, Your Honors, prior statements on the subject of a witness's testimony are always discoverable for impeachment purposes. The information here was material, probative, and dispositive. And any proof that T.H. either perjured herself with respect to the testimony in this trial or that she was mistaken would be favorable to Moseley's defense. Furthermore, Judge Ripple, an esteemed member of this court and a professor at Notre Dame Law School, discussed the meaning of Ritchie and his Davis v. Litcher dissent. He explained that anything more than a vague allegation would satisfy Ritchie's plausible showing standard. And he said that by requiring the defendant to proffer further evidence, the Wisconsin court adopted the very specificity standard that the Supreme Court had rejected in Ritchie. Your Honors, if Ritchie's vague speculations and search for unspecified evidence satisfied the Supreme Court standard, then Moseley's clearly articulated assertions have also satisfied it and mandate the same result. Additionally, the denial of an in-camera review further undermined Moseley's ability to develop his defense in violation of his Sixth Amendment rights. Because the court did not apply the correct constitutional standard, coming from Pennsylvania v. Ritchie. What would the in-camera review have shown? Your Honor, the in-camera review likely would have shown what specific diagnosis she had, what medications she was on, what symptoms those medications have, what dosages she was prescribed as opposed to what dosages she actually took, whether the medication was working to treat her psychosis or mental infirmity. All of that is relevant to her credibility. Credibility is always material in any case, Your Honor, but particularly here where she was the only witness with respect to these allegations. Because Ritchie has met the plausibility standard and because this all affected his right to confront his accuser, Moseley respectfully requests that you reverse the lower court's decision and remand for an in-camera review. Thank you. I don't understand how the, um, so this, this in-camera review would have shown what drug she was taking? Your Honor, the in-camera review that we're seeking is limited to a very specific subset of documents, that being her therapy records. And we have strong reason to believe that her therapy records would indicate her exact diagnosis. She was seeing this therapist for a period of time. And what medications she was on. Yes, I know. So what do you think it would show? We think it would show that she had some sort of psychosis that affected her ability to perceive or accurately relay events. And that that would have... Well, that would make her a more likely victim, wouldn't it? Can you rephrase the question, Your Honor? Well, uh, drugging, drugging a woman is a, is a standard way of, of, um, of, you know, getting, getting sex with her, right? That was the allegation that T.H., uh, put forth in this case. Pardon? That's what T.H. alleged, that, um, Moseley on one occasion, um, had done that. I mean, if she, if she's taking drugs, of course, that makes her more vulnerable. It does, Your Honor. Moseley's... So why would you expect Moseley to be helped by revelation of her medical records? It's with regard to her therapy records, Your Honor. It goes... Do what? With regards to her therapy records. You keep talking about therapy records, right? Yes. Well, that'll show drug taking, won't it? It can, Your Honor, yes. Yes. And how would that help this case to show that, uh, that, that, uh, T.H. was drugged? Your Honor, not... Respectfully, Your Honor, it wouldn't show that she was drugged with regard to the allegations. We're seeking the in-camera review to confirm what mental psychosis she had and what drugs her therapist prescribed for her to treat that. Well, that would be part of the record. Your Honor, to the best of my knowledge, that's not part of the record and that's what we're here seeking. That was never turned over by the state. Well, if you're... If your client is entitled to the medical records, so is the government. Your Honor, footnote four in my brief explains the dialogue that occurred in a pre-trial motion. Um... What? Footnote four in the brief explicitly lays out the dialogue that occurred with respect to this issue in a pre-trial hearing, uh, dating back to 2010, and there, uh, defense counsel explained to the judge, in arguing for this same relief for an in-camera review, he explained that T.H. had given the records to the, uh, excuse me, to police officers. Police officers later gave them to the state. Mosley's defense counsel had asked for those records, the state wouldn't turn them over, and that's why they were seeking an in-camera review. They wanted the judge to see them. What period of time would these records cover? How many sessions, I guess, would... Your Honor, we don't know the exact start and end date of her therapy. We do know, however, by virtue of her own admission, that she was in therapy when she was involved with Mosley. Well, that's six years. Yes. The relationship was six years. We don't have a... Wouldn't it be probable that, if you're having this therapy all the time, that Mosley might have come into the discussion? Yes, Your Honor, and that's part of our argument. We know... Well, that's not something you want, because if it goes back over years of time, and then she's acknowledging this contact with him, I guess... Your Honor, respectfully, Your Honor, we actually do want the records precisely for that reason, given that... It can't be helpful. Your Honor, we believe that it would be helpful for the purposes of credibility and impeachment, given that she had made prior false accusations against Mosley. In other words, I guess if she said three times, and it turns out that she was talking about it all through all of this therapy, that would impeach her? Anything that would provide a basis for impeachment, or to challenge her credibility, would have been both material and favorable to the defendant, Your Honor. Wouldn't this apply to... You mentioned that she was the only other witness. Wouldn't this apply to any situation in which there were only the two people involved? You could always ask for a medical record? Your Honor, your concern is well noted. Mosley is well aware that this affects a victim or accuser's privacy interest. But respectfully, that's... The United States Supreme Court already struck that balance when they determined, Ritchie and Held, that the best way to balance both parties' interests, a defendant and an accuser's, would be through an in-camera review behind closed doors, in chambers, where only a judge is reviewing those records. We're not asking to see the records ourselves. Well, no, but in any event, it's still an intrusion within any situation in which there are two people involved. It would still require an in-camera review. It would be done on a case-by-case determination, Your Honor. To your concern, that is this going to be a blind fishing expedition, I would argue absolutely not. And I think the best fact that I can point you towards is that there were two accusers in this case. Mosley's defense counsel never requested any sort of documents from the first accuser. And with regards to TH, the request has always been to a very specific subset of the documents, just her therapy records. It has not been expansive for a blind fishing expedition in any sense. Okay. Thank you, Ms. Alvarez. Ms. Potts? Good morning. May it please the Court, my name is Abigail Potts. I am here representing the respondent, Mr. Paul Kemper, in this case. And in response to opposing counsel's argument, there's really just two things that I want to focus on. The first is that the Wisconsin standard here is functionally equivalent to the federal standard. Secondly, I also want to reiterate that the state court's decision in this case was reasonable under the federal standard, especially given the immaterial and speculative nature of Mosley's request at the time that he made it. Not here up on appeal, but back when he actually presented it to the court. It was much less specific, and it was very speculative. And that's a large reason why the court denied in Kemper review. It's our position here that the state court applied the proper law. And the law at issue here is, since we are in a habeas case that is confined by the AEDPA, the law cannot be contrary to clearly established Supreme Court precedent. The clearly established federal law at issue here is the standard that the U.S. Supreme Court came down with in the Ritchie case. And although the standard applied by the state court in this case may vary or differ in the language, it is our position that when applied functionally, they are very comparable. And this court found as much in the Dietrich case. And once that is established, really the question we're presented then with is, did the state court apply that applicable standard in a way that was unreasonable given the established Supreme Court precedent in Ritchie? And it's our position that the state court did not unreasonably apply that standard. And just before we get into the substance of why, I think it's important to remember again that we are not here to determine and, you know, have an independent inquiry into whether or not... Okay, you can skip that. Okay. This is a discretionary standard, and I think that's why it's hard to say that if Ritchie had been... What does a discretionary standard mean? A discretionary standard is a standard that is going to change depending upon who's applying it and the facts of a specific case. And I think that's what we have to keep in mind in this case, is that it is hard to know what a certain... What does that have to do with discretion? Applying and recognizing certain facts and weighing them is the discretion of the trial court, so something that they are given a little bit more latitude to do. And it is our position that the state court in this case reasonably found that Mr. Mosley simply did not meet the standard as set forth in Ritchie for an in-camera review. And I think one of the critical points I want to make after opposing counsel's argument is that they're mentioning psychosis, they're mentioning drugs, they're mentioning all these things that were never presented. Well, I don't understand why the government would be opposed to having her medical records exposed. That doesn't help him. Our position is that not only was his request, his showing, very vague and very speculative, there's no showing that would be favorable. In fact, when he made his request to the circuit court, he said... He alleged that the victim described her abuse, the abuse from Mr. Mosley to her therapist. To me, that is not going to be a favorable showing. He also... The only other thing that they presented to the circuit court was the fact that... And his attorney, and we put it in the briefs, his attorney said to the court, what if she admits to having an affair with this guy? And that was part of the reason that the court, both the circuit court and the court of appeals, found that they really had no idea what was in the records, and this was, in fact, a phishing expedition or an attempt to simply discover, as opposing counsel said, discover additional impeachment evidence, which is not what this is for. There is a protection that needs to be afforded to confidential mental health records, and And I think it's important to recognize here on habeas review that that is exactly what the state courts were doing, and they didn't do that in an unreasonable manner. They didn't do that in a way that no fair-minded jurist could come up with. This was a case where Mosley made a very generalized showing that potentially, and let's keep in mind at this time, he had no idea about a psychosis. He didn't mention anything about that she was on any drugs. He basically requested this. I don't really understand the government's opposition to that evidence. To showing or doing an in-camera review of the file? No. I agree that it seems as though an in-camera review would be a pretty easy thing simply to do. I think it's important to keep in mind, though, that if these records are records in the government's possession, they already have a Brady obligation to turn over anything favorable or immaterial. So there's already that, and so the fact that nothing was turned over hopefully means nothing like that was in there. So you still have that obligation. I think the state... Did the judge look at this evidence? The judge did not look at the... Well, shouldn't they have looked at it? I don't think they needed to look at it under the... I don't get it. I don't think that the court needed to look at it under Ritchie. How else do you know whether the evidence is probative? Well, that's what the whole Ritchie case is about, is that it's not an automatic thing. Although it might be easy... But I don't get it. Especially... I mean, this is critical evidence. The only possible thing he might have, although I think it would hurt his case. But you'd think, given that it's important evidence, that the judge would want to look at it. This is hindsight, but one thing I think that is important to note is that you call this evidence important evidence. The charge was for... And the crimes were taking photographs, depictions of the victim without her consent. And in her then subsequent trial testimony, she testified that she didn't know any of the photographs existed until the police came to her and showed them to her, which means that she could not have discussed that, could not have discussed the photographs. She could not have what? Discussed the photographs with her therapist. Photographs that she didn't know existed. So I think all the evidence in the record shows that... It gives no indication that there would be both material and favorable. There's a difference between her testimony and these medical records. I agree, I agree. And I still think that the Circuit Court and then the Court of Appeals properly found that Mr. Mosley simply did not make that very low preliminary showing of both materiality and favorability, which can be described in all different terms, but basically that's the consistent theme. He has to show how they're relevant to his case, that they might affect the outcome in a way that's favorable to the defendant. And his very general showing of, hey, maybe she said she had an affair with Mr. Mosley. And his allegation that maybe... Did he have any other evidence? What was that? Did he have any other evidence? That he presented to the Circuit Court, you mean? Yeah. No, not that I know of. So this is the only evidence and it's kept out? Oh, you mean did he have any other evidence? Well, he cross-examined the victim. That's not evidence. Well, that is evidence. No, it is not evidence. It's cross-examination where you're trying to destroy the other person's evidence. It's not your own evidence. The court basically made its decision in part on the fact that, based on what Mr. Mosley was arguing would be in those records, was speculative but was also cumulative of what he can get through cross-examination, which is, does she remember things? She said no. Probably take 15 minutes to look at them. Oh, I agree. And your point is well taken. That's why the standard is lower to get an in-camera review than to get disclosure of that evidence, and we understand that. But on habeas and for the purposes of habeas review, the state really feels like it's important to keep that preliminary showing intact. And under the Ritchie case, we think that the Court of Appeals reasonably applied that, at least given the facts here in this case. The government doesn't know what's in them. No, we don't know what's in them either. Well, I shouldn't say that. The police department was given them. So there is a Brady issue then as far as that goes. Exactly. These are records that were in control of the state as opposed to records that were not in control of the state, which would be a different Ritchie issue if they weren't. But, yeah, so I think three different police departments might have had it, although it's unclear because none of the police reports that Mr. Mosley relies on for his allegations and things, none of them were ever entered into the record. So they were never actually before the circuit court when the circuit court made its decision. So if you don't have any more questions, I guess I will just finish up by saying that we feel this Court has already established that the laws are comparable, the state law and the Ritchie standard, and we think in this case, especially given what was actually presented to the trial court and the Court of Appeals, that Mosley did not make his showing, and that was a reasonable determination. Thank you very much. Thank you very much, Ms. Potts. So, Ms. Alvarez, would you like another minute? Yes, Your Honor. Thank you. Just briefly, Your Honors, to address a couple of points opposing counsel brought up. When asked how would this be favorable, Your Honor, any instance whatsoever in which she said that any aspect of the relationship was consented to, that would be highly material and favorable, because on the stand she said that every single aspect of this relationship from its inception was not consented to. That would go directly to the critical witness's credibility. Additionally, For six years? Her allegation on the stand was that the relationship was not consented to, Your Honor, that she never consented to sex, even though a prior judge had found that there was no probable cause to that allegation. In this case, after that judge had made that determination, she maintained the same allegations. Additionally, our ability to cross-examine TH, the critical witness, effectively was substantially hindered because we don't know her diagnosis, her medications, and whether they were working. We had no access to that information. And Your Honors, as to your concern to the victims, I see that my time is up, Mosley respectfully requests that you reverse the lower court's decision and remand so that a judge can conduct an in-camera review. Thank you. Okay. Thank you very much, Salvarez and Ms. Potts.